**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| KELLEY RICE, on her own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>HILTON GRAND VACATIONS, INC.,<br><br>Defendant. | Case No.: 2:25-cv-02205-TL<br><br>Honorable Judge Tana Lin<br><br>AMENDED CLASS ACTION COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Kelley Rice, on her own behalf and on behalf of others similarly situated, on information and belief except to her own experiences and matters of public record, complains of Defendant Hilton Grand Vacations, Inc. ("HGV") as follows:

## I. INTRODUCTION

1. In 1998, to protect Washington consumers from the annoyance and harassment caused by the burgeoning spam email industry, the Washington State Legislature enacted the Commercial Electronic Mail Act (CEMA), codified at chapter 190 of title 19 of the Revised Code of Washington (RCW).



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

2. Among other things, CEMA prohibits transmitting a commercial email with "false or misleading information in the subject line" to the email address of a Washington resident. RCW 19.190.020(1)(b).

3. Defendant HGV engages in the precise activity which CEMA prohibits.

4. HGV spams Washington consumers, including Plaintiff, with commercial emails whose subject lines employ various tactics to create a false sense of urgency in consumers' minds—and ultimately, from consumers' wallets.

5. This false urgency wastes consumers' time by enticing them to engage with the defendant's marketing efforts for fear of missing out. It also floods consumers' email inboxes with repeated false notifications that the time to act—*i.e. purchase*—is short.

6. And through this deceptive time-sensitivity, HGV falsely narrows the field—steering consumers away from shopping for better deals—to its own products and services which must be purchased *now*.

7. Plaintiff challenges the defendant's harassment of Washington consumers with deceptive marketing for violations of the Commercial Electronic Mail Act (RCW 19.190.020) and the Consumer Protection Act (RCW 19.86.020) for injuries caused, additionally seeking injunctive relief against such violations in the future.

## II. JURISDICTION AND VENUE

8. Defendant has invoked this Court's jurisdiction under 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

9. Venue is proper in the Western District of Washington under 28 U.S.C. § 1441


STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

because this district and division embrace the place from which Defendant removed this action, King County Superior Court (Case No. 25-2-28766-1 SEA).

## III. PARTIES

10. Plaintiff Kelley Rice is a resident of King County, Washington.

11. Defendant Hilton Grand Vacations, Inc., is incorporated in Delaware with its principal address at 6355 MetroWest Boulevard, Suite 180, Orlando, FL, 32835.

## IV. FACTUAL ALLEGATIONS

### A. CEMA protects Washington consumers from deceptive spam emails.

12. The Supreme Court of Washington has made clear: "[A]ll Internet users … bear the cost of deceptive spam." *State v. Heckel*, 143 Wn. 2d 824, 835 (2001) (en banc).

13. In 1998, the Legislature found that the "volume of commercial electronic mail" was "growing," generating an "increasing number of consumer complaints." Laws of 1998, ch. 149, § 1.

14. While it's been nearly three decades since CEMA's enactment, the problems caused by unsolicited commercial email, *i.e.* spam email, have grown exponentially.

15. The problems, however, are not limited to email content. Subject lines of emails are framed to attract consumers' attention away from the spam barrage to a message that entices consumers to click and, ultimately, *purchase*.

16. In 2003, the United States Congress found that "[m]any senders of unsolicited commercial electronic mail purposefully include misleading information in the messages' subject lines in order to induce the recipients to view the messages." 15 U.S.C. § 7701(a)(8).



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

17. In 2012, one study estimated that Americans bear "costs of almost $20 billion annually" due to unsolicited commercial email. Justin M. Rao & David H. Reiley, *The Economics of Spam*, 26 J. of Econ. Perspectives 87, 88 (2012).

18. Even when bulk commercial email marketers are operating under color of consumer consent, the reality is that "[m]ost privacy consent"—especially under the "notice-and-choice" approach predominant in the United States—"is a fiction." Daniel J. Solove, *Murky Consent: An Approach to the Fictions of Consent in Privacy Law*, 104 Boston Univ. L. Rev. 593, 596 (2024).

19. Consumers therefore routinely "consent" to receive flurries of commercial emails which they did not meaningfully request and in which they have no genuine interest.

20. This includes emails sent to consumers from businesses with which they have no prior relationship—by virtue of commercial data brokers and commercial data sharing agreements.

21. Simply conducting the routine affairs of daily life often exposes consumers to unanticipated and unwanted volumes of commercial email. "Nowadays, you need an email address for everything from opening a bank account to getting your dog's nails trimmed, and … [o]nce you hand over your email address, companies often use it as an all-access pass to your inbox: Think of shopping websites that send account updates, deals, 'we miss you' messages, and holiday promotions throughout the year. It's too much." Kaitlyn Wells, *Email Unsubscribe Services Don't Really Work*, N.Y. Times Wirecutter (Aug. 19, 2024), https://perma.cc/U8S6-R8RU/.

22. The Legislature presciently intended CEMA to "provide some immediate relief" for these problems by prohibiting among other things commercial emails that "contain untrue or misleading information in the subject line." Laws of 1998, ch. 149, § 1.



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

23. CEMA thereby protects Washington consumers against the "harms resulting from deceptive commercial e-mails," which "resemble the type of harms remedied by nuisance or fraud actions." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019).

24. CEMA's "truthfulness requirements" increase the costs of sending deceptive commercial emails and thereby reduce their volume. *Heckel*, 143 Wn. 2d at 836.

25. CEMA's "truthfulness requirements" thereby advance the statute's aim of protecting consumers "from the problems associated with commercial bulk e-mail" while facilitating commerce "by eliminating fraud and deception." *Id.*

26. CEMA "mean[s] exactly what it says": in "broad" but "patently clear" language, CEMA unambiguously prohibits "sending Washington residents commercial e-mails that contain *any* false or misleading information in the subject lines of such e-mails." *Certification from U.S. Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy, LLC*, 567 P.3d 38, 44, 46–47 (Wash. 2025).

27. CEMA's protections do not depend on whether any email was (really or fictively) solicited by consumers, nor on whether consumers relied on any false or misleading statement contained in its subject line. *See Harbers*, 415 F. Supp. 3d at 1011.

28. The statute's only concern is to suppress false or misleading information in the subject line of commercial emails. *See Brown*, 567 P.3d at 44–45.

**B. The subject lines of HGV's marketing emails make false time scarcity claims.**

29. One common way online marketers "manipulate consumer choice by inducing false beliefs" is to create a false sense of urgency or to falsely claim that consumers' time to act is scarce.



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

Fed. Trade Comm'n, *Bringing Dark Patterns to Light* 4 (2022), https://perma.cc/847M-EY69/; *see also* U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 26 (2022), https://perma.cc/V848-7TVV/.

30. The FTC has identified the "False Limited Time Message" as one example of false time scarcity claims, in which the marketer creates "pressure to buy immediately by saying the offer is good only for a limited time or that the deal ends soon—but without a deadline or with a meaningless deadline that just resets when reached." *Bringing Dark Patterns to Light*, *supra* para. 29, at 22.

31. "False or misleading scarcity claims can change the behaviour of consumers." *Online Choice Architecture, supra* para. 30, at 27.

32. Representations about the timing and duration of sales, discounts, and other special offers are fundamentally representations about prices, and such representations matter to ordinary consumers. *See, e.g.*, Huiliang Zhao *et al.*, *Impact of Pricing and Product Information on Consumer Buying Behavior with Consumer Satisfaction in a Mediating Role*, 12 Frontiers in Psychology 720151 (2021), *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC8710754/pdf/fpsyg-12-720151.pdf/.

33. False scarcity claims are psychologically effective. As "considerable evidence" suggests, "consumers react to scarcity and divert their attention to information where they might miss opportunities." *Online Choice Architecture*, *supra* para. 29, at 26.

34. Invoking this time pressure achieves a seller's aim to narrow the field of competitive products and deals, by "induc[ing] consumers to rely on heuristics (mental shortcuts),



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

like limiting focus to a restricted set of attributes or deciding based on habit." *Id.*

35. Under time pressure, "consumers might take up an offer to minimise the uncertainty of passing it up." *Id.*

36. False time scarcity claims thus *harm consumers* by manipulatively distorting their decision-making to *their detriment—and the seller's benefit*.

37. Indeed, one 2019 study found that "customers who took timed deals rather than waiting to see wider options ended up worse off than those who waited." *Id.* at 27.

38. False time scarcity claims also harm market competition. Consumers learn to ignore scarcity claims, "meaning that when a product [or offer] is truly scarce, the seller will not be able to credibly communicate this information." *Id.*

39. These false time scarcity claims are a staple of the defendant's email scheme to compel consumers to purchase its products.

40. HGV operates a timeshare program whereby consumers may obtain access to vacation properties in a variety of locations including North America, Europe, the Caribbean, and Japan. HGV frequently sends marketing emails to non-members, offering stays at properties within HGV's network at reduced pricing.

41. **Urgent Spam Emails.** Unfortunately for those recipients, HGV regularly titles its emails with urgent subject headings that do not reflect the true availability of the advertised deal. This strategy is demonstrated in the examples below.

42. HGV's use of false time scarcity claims to entice consumers to purchase its products is readily apparent in its "from $109" series of vacation offers.



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

43. Once HGV has announced a promotion, it uses the subject lines of its follow-up emails to assert false time pressure on recipients. These subject lines urge consumers to make bookings at HGV properties by warning them that the offer is coming to an end.

44. For example, on December 3, 2024, HGV transmitted an email with the subject heading: “Don’t Miss This Offer! VACAYS FROM $109 To Las Vegas, Gatlinburg + More,” promoting Cyber Monday savings on stays at a variety of destinations, including Orlando and Las Vegas for $109, and Myrtle Beach and Gatlinburg for $199. Text within the email advised that the offer would expire on December 4, 2024.

45. For a family or an individual shopping for a vacation in an era of high interest rates where everything is more expensive, these emails are crafted in a particularly enticing way.

46. After warning consumers about the promotion’s impending end, HGV wraps up its ruse by extending the offer with a new expiration date or by reviving the offer a few days later.

47. For the December, 2024 Vacays from $109 promotion, HGV replaced the false deadline with a later date, thereby extending the promotion beyond its advertised expiration.

48. On December 5, 2024, mere days later, HGV changed the deadline for its offer, as communicated in an email titled: “Thought You Missed It? Cyber Monday Sale EXTENDED!” The body of the message offered stays at the same destinations at the same rates but extended the deadline to December 8, 2024.

49. Thus, one day after the advertised deadline and two days after warning consumers not to miss the offer, HGV extended the sale and proved the falsity of its urgent December 3, 2024, subject line. Consumers in receipt of the December 3 email were not at risk of missing the deal,



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

had they ignored the email's title, because HGV did not end the promotion on December 4.

50. HGV continued to spam consumers about the promotion in a December 6, 2024, email with the title: "This Is It! Just HOURS LEFT to Get your Vacay From $109[.]" The subject line suggested consumers had mere hours to act on the offer. However, the email was transmitted at 1:15 A.M. on December 6, and the offer didn't expire until December 8, 2024. So, in truth, recipients had roughly two days to accept the offer.

51. Despite HGV's representations that its "From $109" promotion was subject to time limits, it quickly transmitted the same offer again on February 24, 2025, in an email with the subject line: "ALMOST GONE: Your Chance To Get Away From $109." The message promoted 3-day stays at a variety of destinations, much like the December 2024 offer, including Orlando and Las Vegas for $109, and Myrtle Beach and Gatlinburg for $199. Text within the email advised that the offer would expire on February 25, 2025.

52. However, the claim made in the email's subject line was untrue. Consumers' chance to accept the deal was not "almost gone."

53. Repeating its trick from December 2024, HGV changed the deadline for its February 2025 promotion, as communicated in a February 25, 2025, email titled: "Surprise! That Vacay From $109 Is Still Here 🎉 [.]" The body of the message offers stays at the same destinations at the same rates but extends the deadline to March 2, 2025.

54. Thus, despite HGV's February 24, 2025, subject line, consumers had substantially more time to accept the offer. The "almost gone" warning was simply another example of HGV's deceptive strategy: manufacturing false time pressure meant to drive consumers to book stays at



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

its properties.

55. As these promotions demonstrate, HGV employs a strategy where it pressures consumers to purchase stays at its properties by falsely representing the limited availability of its offers; offers that are repackaged, repeated, and redeployed.

56. While HGV may present these extensions as though they are a favor to consumers, they are anything but. By deploying false time pressures with surprise extensions or revived offers, HGV pushes consumers to purchase quickly while withholding availability terms that consumers need before they can make informed buying decisions.

57. Consumers generally value cheaper stays because they do not strain a budget, much like cheap airline tickets or travel packages. Offering a low price with an exploding offer limited by time is particularly enticing to a consumer looking to get away without breaking the bank. HGV plays on such urges to save money by adding false urgency to its communications.

58. HGV's $199 3-Night Getaway promotion in early 2025 provides a similar example.

59. On March 10, 2025, HGV utilized a call to urgency in an email with the subject line: "Your $199 3-Night Getaway Is Almost Gone[.]" The body of the message offers stays in Orlando and Las Vegas at the advertised price and states that the offers expire on March 11, 2025.

60. The offer, however, was far from gone. It didn't take long for HGV to demonstrate the falsity of its March 10 subject line because, by March 13, 2025, HGV returned to consumers' inboxes to spam them with the same offer.

61. HGV sent an email on March 13, 2025, with the subject line: "Don't Miss Out On A $199 Getaway[.]" Again, the stays, rates, and destinations are identical to those offered in the



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

March 10, 2025, email. However, the email text extends the offer, updating the deadline to March 18, 2025. Thus, the call to urgency on March 10 was misleading because the same terms would be offered well beyond March 11, 2025.

62. On March 16, 2025, HGV cautioned consumers that the $199 offer was nearing its end in an email titled exactly like the March 10 message: “Your $199 3-Night Getaway Is Almost Gone[.]” Again, the body of the message offers stays in Orlando and Las Vegas at the advertised price, noting that the offers would expire on March 18, 2025.

63. By 1:25 A.M. on March 18, 2025, HGV had extended the offer for another week in an email with the subject line: “Enjoy A 3-Night Getaway For $199 + Get 25,000 Hilton Honors Points[.]” The email’s text offers the same stays, in Orlando and Vegas, for the same price and terms except that the deadline was updated to March 25, 2025.

64. So, despite HGV’s repeated warnings that the opportunity was coming to an end, consumers would have additional time—additional days, in fact—beyond the threatened deadlines during which they could choose to participate in the promotion. The time scarcity communicated in the March 10, March 13, and March 16 subject lines was false.

65. As these subject lines demonstrate, HGV engages in an email marketing strategy whereby it creates a false sense of urgency, misrepresents when offers end, and then strategically extends or revives those offers to pull in consumers using email titles that misrepresent the availability of deals.

66. HGV’s deceptions would last much longer than the trips it offered.

67. Refusing to get away from its pattern of misrepresentations, HGV sent an email



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

repeating the title "Your $199 3-Night Getaway Is Almost Gone" on March 30, 2025. Text within the email offers the same stays for the same price but updates the offer's expiration date to April 1, 2025.

68. Again, on April 3, 2025, HGV transmitted an email with the subject line: "LAST CHANCE For Your $199 Vacay — Extended Offer Ends Soon[.]" Again, the body of the email offers stays in Orlando and Las Vegas for the advertised price but updates the offer's expiration date to April 6, 2025.

69. These "extended" offers did not in fact "end soon." They were simply a marketing strategy that used false urgency to draw in consumers.

70. Despite HGV's repetitive warnings, consumers would have access to the same deal in the next month. A May 20, 2025, email with the subject line: "Get 25,000 Hilton Honors Points (Seriously!)" once again offered stays in Orlando and Las Vegas for $199.

71. Thus, HGV used its spam email campaign to warn consumers that a $199 3-Night Getaway promotion was "almost gone" on March 10, 2025, and on several occasions thereafter, even though the same offer would be available well into the following months.

72. HGV has been deploying the same deceptive strategy for years.

73. For example, on March 28, 2022, HGV pressured consumers to purchase an Orlando stay in an email titled: "Last Chance ⏳ To Book Your Summer Getaway For $199[.]" The message offered a $199 stay in Orlando for four days and three nights. Consumers who booked a stay also received 25,000 Hilton Honors Points. Text at the bottom of the message confirmed that the offer would expire on March 29, 2022.



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

74. The March 28 subject line needlessly pressured consumers to act because the opportunity would soon return. In a matter of days, consumers were again spammed with the same offer.

75. On April 4, 2022, HGV transmitted an email with the subject line: "Summer Getaways Are Heating Up, Starting At $199 😎[.]" Again, consumers were offered a four day and three night stay in Orlando for $199. Again, consumers who booked the stay would receive 25,000 Hilton Honors Points.

76. The March 28, 2022, subject line was false, as confirmed by the April 4 email, and intended to mislead consumers.

77. HGV used false time pressures in February 2023 as well.

78. On February 13, 2023, it sent an email with the headline: "[recipient's name], Your 2 FREE NIGHTS Are Almost Gone[.]" The body of the email advertised "2 FREE NIGHTS" for consumers who booked a four-night stay in Orlando, Las Vegas, Virginia Beach, or New York. The message also provided an expiration date of February 14, 2023.

79. Unfortunately for consumers, the February 13 subject line and the purported expiration date were both deceptive. The opportunity to participate in the offer was not "almost gone" and February 14 was not the end of the promotion.

80. In a February 17, 2023, email titled, "[recipient's name], Don't Miss Out on a Getaway Starting at $299 This Spring[,]" HGV presented a nearly verbatim offer to consumers. The graphics and text of the message were almost identical, though the February 17 email provided a new expiration date of February 21, 2023.



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

81. Before the month was over, HGV recycled the ruse and executed its strategy yet again using the same promotion.

82. On February 19, 2023, HGV sent an email warning consumers that the promotion was ending soon. The message included the subject line: "[recipient's name], Your 2 FREE NIGHTS Are Almost Gone[.]" The email detailed the same offer and included the February 21, 2023 end date.

83. Despite the clearly communicated February 21 expiration date, HGV presented the same offer on February 24, 2023, in an email titled: "[recipient's name], Don't Miss Out On A Getaway Starting at $299 This Spring[.]" Again, the offer was for "2 FREE NIGHTS" for consumers who booked a four-night stay in Orlando, Las Vegas, Virginia Beach, or New York. However, the offer had a new end date of February 28, 2023; the third expiration date given to the same promotion within the same month.

84. Thus, HGV sent consumers misleading subject lines on both February 13 and February 19, warning them of their "last chance" to accept the deal. In reality, the advertised deadlines were false. The same offer was available to consumers from approximately February 6 through February 28.

85. The misleading time pressure in these communications couldn't be clearer. A consumer in receipt of the February 13 and February 19 emails is urged to make their reservation quickly because the subject lines advise that the opportunity is ending soon. However, the same opportunity was available to consumers for most of the month.

86. The deception continued in March 2023. HGV warned consumers that the same



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

promotion was "almost gone" and provided a false end date. Then, once the advertised expiration date arrived, HGV sent an email announcing a new expiration date. The pattern is clear in the email subject lines below:

a. 3/6/23: "[recipient's name], Your Spring Getaway Starting At $299 Is Almost Gone[.]"

b. 3/7/23: "[recipient's name], Enjoy A Spring Getaway Starting At $299 + Get 50,000 Hilton Honors Points[.]"

c. 3/12/23: "[recipient's name], Your Spring Getaway Starting at $299 Is Almost Gone[.]"

d. 3/14/23: "[recipient's name], Enjoy A Spring Getaway Starting At $299 + Get 50,000 Hilton Honors Points[.]"

87. In 2024, HGV applied its strategy to a promotion offering a "3-Night Getaway for $129[.]"

88. On March 22, 2024, HGV sent an email to consumers warning them about the promotion's impending deadline. The message's subject line stated: "[recipient's name], Your $129 Getaway is Still Here – But Not For Long[.]" The email informed consumers that they must purchase the offer by March 26, 2024.

89. However, on March 26, the advertised deadline, HGV sent an email presenting consumers with the same offer as though the prior offer and deadline never existed. The message was titled: "[recipient's name], Get Away 3 Nights For $129[.]" The email also provided a new end date for the promotion of April 2, 2024.



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

90. HGV doesn't limit its false time pressure strategy to promoting trips. It also manufactures time scarcity pressures in the context of reward point programs.

91. Hilton Honors points carry financial value. They can also be redeemed for other goods and services worth actual cash.

92. A March 31, 2025, email with the subject line: "GONE TOMORROW: This 100,000 Hilton Honors Points Offer" urges consumers to promptly book a stay at one of the destinations named in the message, otherwise they will not receive the advertised points. The body of the email cautions that the offer expires on April 1, 2025.

93. An April 2, 2025, email titled: "OFFER EXTENDED: You Can Still Get 100,000 Hilton Honors Points" demonstrates that the time pressure asserted on March 31 was entirely contrived. Within the message, HGV alters only a single term of its offer: the expiration date. The promotion initially set to end on April 1, 2025, was extended to April 6, 2025. Thus, the offer urgently promoted on March 31, 2025, was by no means "gone." Consumers had at least five more days to obtain the deal.

94. HGV used the same strategy in 2023 as well.

95. On April 30, 2023, HGV sent an email with the subject line: "[recipient's name], Last Chance To Secure Your Savings On A Getaway[.]" The promotion offered 75,000 Hilton Honors Points to consumers who booked a "3-Night Getaway" at properties in New York, Chicago, Myrtle Beach, Orlando, or Las Vegas. Text at the bottom of the email clearly warned that the offer "[e]xpires May 2, 2023[.]"

96. However, on the purported May 2, 2023 expiration date, HGV sent consumers a



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

nearly identical message titled: "[recipient's name], Your Vacation Can Get You 75,000 Hilton Honors Points[.]" The body of the email presented the same offer for booking stays in the same cities. However, the message communicated a new end date of May 9, 2023.

97. Despite the unambiguous end date presented to consumers and the "last chance" warning sent in the April 30 subject line, the offer did not end on May 2, as HGV advertised.

98. However, the offer didn't end on May 9, 2023, either.

99. On May 8, 2023, HGV sent an email warning consumers that the deal was coming to an end in an email titled exactly like the message sent on April 30: "[recipient's name], Last Chance To Secure Your Savings On A Getaway[.]" Text within the email reiterated the May 9, 2023, end date.

100. Then, on May 9, the advertised expiration date, HGV sent an email communicating a new expiration date. The message's subject line copied the subject line of the May 2, 2023, email verbatim: "[recipient's name], Your Vacation Can Get You 75,000 Hilton Honors Points[.]" The message itself presented the same offer, though it listed a new expiration date of May 16, 2023.

101. Thus, the subject lines from April 30 and May 8 falsely presented consumers with "last chance" warnings. Neither date marked the end of the promotion.

102. HGV also creates a false sense of urgency surrounding its certificate offers.

103. On April 13, 2025, HGV sent an email titled: "FINAL HOURS To Get $200 Towards A Future Stay 💸[.]" The body of the message promises a $200 certificate, to be used on a future stay, for consumers who purchase a 3-night getaway.

104. The use of the money with wings emoji heightens the sense of urgency on this deal.



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

105. While the April 13 subject line told consumers they had only hours to accept the deal, HGV would revive the offer in an April 22, 2025, email titled: "We Couldn't Resist Bringing This $200 Reward Back!" Within the message, the same terms are offered, except for a new deadline: April 29, 2025. Thus, the "final hours" cautioned on April 13, 2025, were a false pressure tactic. Within the same month, HGV made the offer available for roughly 168 additional hours.

106. A similar example occurred in December 2023.

107. On December 18, 2023, HGV sent consumers an email with the subject line: "[recipient's name], Last Chance to Lock In This Holiday Deal[.]" The promotion offered a $100 Visa Gift Card when consumers booked one of the required stays in Orlando, Las Vegas, New York City, or Myrtle Beach. The email stated that consumers were required to make their purchases by December 19, 2023, to qualify.

108. Within days of warning recipients that the offer was coming to an end, HGV revived the deal in an email sent on December 22, 2023, and titled: "[recipient's name], Don't Miss This Great Holiday Offer – Details Inside[.]" The message presented the same offer for stays in the same cities but updated the expiration date to December 27, 2023.

109. In a series of emails from April 2024, HGV recycled its misleading gift card scheme.

110. On April 15, 2024, HGV warned consumers that such an offer was coming to an end in an email with the subject line: "[recipient's name], Last Chance To Get A $100 Visa® Gift Card[.]" To qualify for the gift card, consumers had to book a 3-night getaway at certain HGV's locations. According to the message, the offer would expire on April 16, 2024.



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

111. True to form, HGV sent an email reviving the offer days later.

112. On April 23, 2024, it sent a message with the heading: "[recipient's name], Your Vacation Gets You A $100 Visa® Gift Card[.]" The email specified the same terms as the April 15 message but provided a new expiration date of April 30, 2024.

113. Thus, the last chance warned of in the April 15 email was a misleading subject line. Within a short time, consumers would have an entire week during which they could opt to accept the offer.

114. These and other examples of the commercial emails that HGV has sent consumers containing subject lines with false or misleading statements are attached to this Class Action Complaint as Exhibit A.

**C. HGV knows when it sends emails to Washington residents.**

115. A sophisticated commercial enterprise, like HGV, which is engaged in persistent marketing through mass email campaigns across the United States, has several ways of knowing where the recipients of its marketing emails are located. The means it employs are peculiarly within its knowledge.

116. First, the sheer volume of email marketing that HGV engages in put it on notice that Washington residents would receive its emails.

117. Second, HGV may obtain location information tied to email addresses when consumers make purchases from HGV through digital platforms, including the HGV website, or otherwise self-report such information to HGV.

118. Third, HGV may obtain location information tied to email addresses by tracking



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

the IP addresses of devices used to open its emails, which in turn can be correlated to physical location (as illustrated, for example, by the website https://whatismyipaddress.com/).

119. Specifically, HGV likely uses Adobe Campaign to manage its email marketing campaigns. This platform should allow HGV to access a list of every email address that was sent a marketing email. It should also allow HGV to determine who viewed the emails and who clicked on any links within them.

120. HGV is likely able to infer the general geographic location of recipients by state based on their IP address at the time of email open or link click.

121. Fourth, HGV may obtain location information tied to email addresses by purchasing consumer data from commercial data brokers such as Acxiom, Oracle, and Equifax, which sell access to databases linking email addresses to physical locations, among other identifiers.

122. Fifth, HGV may obtain location information tied to email addresses by using "identity resolution" services offered by companies such as LiveRamp, which can connect consumers' email addresses to their physical locations, among other identifiers.

123. Sixth, HGV may obtain information that the recipients of its marketing emails are Washington residents because that information is available, upon request, from the registrant of the Internet domain names contained in the recipients' email addresses. *See* RCW 19.190.020(2).

124. It is thus highly probable that a seller with the size and sophistication of HGV employs not just one but several means of tying consumers' email addresses to their physical locations, at least at the state level.



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

**D. HGV violated Plaintiff's right under CEMA to be free from deceptive commercial emails.**

125. HGV has spammed Plaintiff with commercial emails whose subject lines contain false or misleading statements in violation of her right to be free from such annoyance and harassment under CEMA.

126. Plaintiff received a number of the email promotions described above in Section B, including the February 24, 2025, email titled: "ALMOST GONE: Your Chance To Get Away From $109"; the March 31, 2025, email titled: "GONE TOMORROW: This 100,000 Hilton Honors Points Offer"; and the April 13, 2025, email titled: "FINAL HOURS To Get $200 Towards A Future Stay 💸 [.]"

127. These emails were false or misleading in violation of CEMA, for misrepresenting the timing of the deals, as described herein.

128. These emails contained false statements of fact as to the "duration or availability of a promotion." *Brown*, 567 P.3d at 47.

## V. CLASS ALLEGATIONS

129. Plaintiff bring this action under Civil Rule 23 on behalf of the following putative class ("Class"):

> All Washington citizens holding an email address to which Defendant sent or caused to be sent any email listed in Exhibit A during the Class Period.

130. Excluded from this definition of the Class are Defendant's officers, directors, and employees; Defendant's parents, subsidiaries, affiliates, and any entity in which Defendant has a



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

controlling interest; undersigned counsel for Plaintiff; and all judges and court staff to whom this action may be assigned, as well as their immediate family members.

131. The Class Period extends from the date four years before this Class Action Complaint is filed to the date a class certification order is entered in this action.

132. Plaintiff reserves the right to amend the Class definition as discovery reveals additional emails containing false or misleading information in the subject line that Defendant sent or caused to be sent during the Class Period to email addresses held by Washington residents.

133. The Class is so numerous that joinder of all members is impracticable because the Class is estimated to minimally contain thousands of members.

134. There are questions of law or fact common to the class, including without limitation whether Defendant sent commercial emails containing false or misleading information in the subject line; whether Defendant sent such emails to email addresses it knew or had to reason to know were held by Washington residents; whether Defendant's conduct violated CEMA; whether Defendant's violation of CEMA constituted a *per se* violation of the Consumer Protection Act, RCW 19.86.020 (CPA); and whether Defendant should be enjoined from such conduct.

135. Plaintiff's claims are typical of the Class's because, among other reasons, Plaintiff and Class members share the same statutory rights under CEMA and the CPA, which Defendant violated in the same way by the uniform false or misleading marketing messages it sent to all putative members.

136. Plaintiff will fairly and adequately protect the Class's interests because, among other reasons, Plaintiff shares the Class's interest in avoiding unlawful false or misleading



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

marketing; has no interest adverse to the Class; and has retained competent counsel extensively experienced in consumer protection and class action litigation.

137. Defendant has acted on grounds generally applicable to the Class, in that, among other ways, it engaged in the uniform conduct of sending uniform commercial emails to Plaintiff and the Class, which violate CEMA and the CPA in the same way, and from which it may be enjoined as to Plaintiff and all Class members, thereby making appropriate final injunctive relief with respect to the Class as a whole.

138. The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, in that, among other ways, Defendant has violated their rights under the same laws by the same conduct, and the only matters for individual determination are the number of false or misleading emails received by each Class member and that Class member's resulting damages.

139. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other reasons, the claims at issue may be too small to justify individual litigation and management of this action as a class presents no special difficulties.

## VI. CLAIMS TO RELIEF

### <u>First Claim to Relief</u>

### Violation of the Commercial Electronic Mail Act, RCW 19.190.020

140. Plaintiff incorporates and realleges paragraphs 1–128 above.

141. CEMA provides that "[n]o person may initiate the transmission, conspire with



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

142. Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

143. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

144. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents, including because Defendant knew that Plaintiff and putative members were Washington residents as such "information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address." RCW 19.190.020(b)(2).

145. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

146. For Defendant's violation of CEMA, Plaintiff is entitled to all available relief, including an injunction against further violations.



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

## Second Claim to Relief

**Violation of the Consumer Protection Act, RCW 19.86.020**

147. Plaintiff incorporates and realleges paragraphs 1–128 above.

148. The CPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020.

149. A violation of CEMA is a *per se* violation of the CPA. RCW 19.190.030.

150. A violation of CEMA establishes all the elements necessary to bring a private action under the CPA. *Wright v. Lyft*, 189 Wn. 2d 718 (2017).

151. CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

152. Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

153. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

154. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents.



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

155. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

156. For Defendant's violation of the CPA, Plaintiff and putative members are entitled to an injunction against further violations; the greater of Plaintiff's actual damages or liquidated damages of $500 per violation, trebled; and costs of the suit, including a reasonable attorney's fee.

## VII. JURY DEMAND

157. Plaintiff will demand a jury trial by separate document in accordance with Local Civil Rule 38(b).

## VIII. PRAYER FOR RELIEF

Plaintiff asks that the Court:

A. Certify the proposed Class, appoint Plaintiff as Class representative, and appoint undersigned counsel as Class counsel;

B. Enter a judgment in Plaintiff's and the Class's favor permanently enjoining Defendant from the unlawful conduct alleged;

C. Enter a judgment in Plaintiff's and the Class's favor awarding actual or liquidated damages, trebled, according to proof;

D. Award Plaintiff's costs of suit, including reasonable attorneys' fees; and

E. Order such further relief the Court finds appropriate.

*[Counsel signature block to follow on next page.]*



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

DATE: December 2, 2025

Respectfully submitted,

*/s/ Samuel J. Strauss*

Samuel J. Strauss
Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel.: (872) 263-1100
sam@straussborrelli.com
raina@straussborrelli.com

Lynn A. Toops*
Natalie A. Lyons*
Ian R. Bensberg*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
ibensberg@cohenmalad.com

Michael C. Tackeff *(pro hac vice)*
J. Gerard Stranch, IV*
Andrew K. Murray*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801
gstranch@stranchlaw.com
mtackeff@stranchlaw.com
amurray@stranchlaw.com

*Attorneys for Plaintiff*

* Applications for admission *pro hac vice* forthcoming

## CERTIFICATE OF SERVICE

I, Samuel J. Strauss, hereby certify that on December 2, 2025, I caused the foregoing to be electronically filed with the Court using the Court's CM/ECF system which will send an electronic copy to all parties and/or their counsel of record.

DATED this 2nd day of December, 2025.

Respectfully submitted,

*/s/ Samuel J. Strauss*

Samuel J. Strauss
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel.: (872) 263-1100
sam@straussborrelli.com