THE HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KELLEY RICE, on her own behalf and on behalf of others similarly situated,<br><br>                        Plaintiff,<br><br>   v.<br><br>HILTON GRAND VACATIONS, INC,<br><br>                        Defendant. | Case No. 2:25-cv-02205-TL<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**<br><br>**NOTED ON MOTION CALENDAR: MARCH 3, 2026** |

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT -
CASE NO. 2:25-cv-02205-TL

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ..................................................................................................... 3

     A.    CAN-SPAM Preempts Plaintiff's CEMA Claim. ................................................ 3

          1.    Plaintiff's Reliance on California Authorities Is Unavailing. .................. 6

          2.    The FAC Does Not Satisfy Rule 9(b). ..................................................... 9

     B.    Plaintiff Does Not Allege Materiality. ................................................................. 9

     C.    Plaintiff's Theory of Falsity Is Not Actionable Under CEMA. ......................... 11

     D.    Plaintiff Does Not Allege Knowledge, Actual or Constructive, of Plaintiff's Residence. ......................................................................................................... 12

     E.    Plaintiff's Theory of Liability is Unconstitutionally Punitive. ......................... 13

III.  CONCLUSION ................................................................................................ 15

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT - i
CASE NO. 2:25-cv-02205-TL

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Asis Internet Servs. v. Subscriberbase Inc.*,
  No. 09-3503 SC, 2010 WL 1267763 (N.D. Cal. Apr. 1, 2010).............................................6

*Camreta v. Greene*,
  563 U.S. 692 (2011) ............................................................................................................4

*Gordon v. Virtumundo Inc.*,
  575 F.3d 1040 (9th Cir. 2009) .................................................................... *passim*

*Harrington v. Vineyard Vines, LLC*,
  No. 25-cv-1115-TSZ, 2025 WL 3677479 (W.D. Wash. Dec. 18, 2025) ...........................3, 4

*Irving Firemen's Relief & Retirement Fund v. Uber Techs., Inc.*,
  998 F.3d 397 (9th Cir. 2021) ..............................................................................................7

*Kousisis v. United States*,
  145 S. Ct. 1382 (2025) .......................................................................................................8

*Ma v. Nike, Inc.*,
  No. 25-cv-1235-JLR, 2026 WL 100731 (W.D. Wash. Jan. 14, 2026)...............................3, 4

*Omega World Travel, Inc. v. Mummagraphics, Inc.*,
  469 F.3d 348 (4th Cir. 2006)........................................................................................1, 3, 4, 5

*Smith v. Anastasia Inc.*,
  No. 14-CV-1685-H-MDD, 2014 WL 12577598 (S.D. Cal. Sept. 15, 2014) ........................6

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ............................................................................................10

*Studio 010 Inc. v. Dig. Cashflow LLC*,
  No. 2:20-cv-01018-DGE, 2024 WL 2274320 (W.D. Wash. May 20, 2024) ........................4

*Wakefield v. ViSalus, Inc.*,
  51 F.4th 1109 (9th Cir. 2022) ...........................................................................................12

*Whitaker v. Tesla Motors, Inc.*,
  985 F.3d 1173 (9th Cir. 2021) ...........................................................................................11

*Wright v. TrueCare Prop. Holdings*,
  No. 3:25-cv-00786-JES-BLM, 2025 WL 3248749 (S.D. Cal. Nov. 21, 2025)....................10

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

**State Cases**

*Brown v. Old Navy*,
    4 Wn.3d 580 (2025)..................................................................................................................9

*Copley Place Assocs., LLC v. Tellez-Bortoni*,
    73 N.E.3d 317 (Mass. Ct. App. 2017) ...................................................................................4

*Greenberg v. Dig. Media Sols., LLC*,
    65 Cal. App. 5th 909 (2021).....................................................................................................8

*N. Am. Truck & Trailer, Inc. v. M.C.I. Comm. Servs., Inc.*,
    751 N.W.2d 710 (S.D. 2008)....................................................................................................4

*Nails v. S & R, Inc.*,
    639 A.2d 660 (Md. Ct. App. 1994) .........................................................................................4

*Ridlon v. N.H. Bureau of Sec. Regul.*,
    214 A.3d 1196 (N.H. 2019).......................................................................................................4

*Young v. Toyota Motor Sales, U.S.A.*,
    9 Wn. App. 2d 26, 36, 442 P.3d 5 (2019), *aff'd*, 196 Wn.2d 310, 472 P.3d
    990 (2020) ...................................................................................................................................8

**Federal Statutes**

15 U.S.C. § 7707(b)........................................................................................................1, 3, 4, 5

18 U.S.C. § 2702(c)(6) ...........................................................................................................11

18 U.S.C. § 2707(a)..................................................................................................................11

18 U.S.C. § 2701 *et seq* .........................................................................................................11

**State Statutes**

Ala. Code § 6-5-103 (2026)........................................................................................................4

Cal. Bus. & Prof. Code § 17529.5...............................................................................................6

Commercial Electronic Mail Act.......................................................................................... *passim*

Ga. Code Ann. § 51-6-2 (2025)....................................................................................................4

RCW 19.190.020 ...........................................................................................................6, 10, 11

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT - iii
CASE NO. 2:25-cv-02205-TL

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

**Rules**

Fed. R. Civ. P. 9(b) .................................................................................................................1, 7

**Other Authorities**

Restatement (Second) of Torts § 525 (Sept. 2025) .....................................................................4

S. Rep. No. 108-102 ....................................................................................................................4

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT - iv
CASE NO. 2:25-cv-02205-TL

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

## I.    INTRODUCTION

Plaintiff Kelley Rice's ("Plaintiff") Opposition to Hilton Grand Vacations Inc.'s ("HGV") Motion to Dismiss the Amended Complaint ("Motion") reflects a misapprehension of federal preemption and pleading standards. The Motion should be granted for multiple reasons.

*First*, Plaintiff's claim is preempted by the CAN-SPAM Act. 15 U.S.C. § 7707(b)(1). CAN-SPAM was passed by Congress to *harmonize* the regulation of commercial email and to prevent a "patchwork" of laws across the nation. Mot. at 5. The Opposition misreads the Ninth Circuit's decision in *Virtumundo*, and in so doing misapprehends the bounds of CAN-SPAM's express preemption of CEMA. Plaintiff's expansive view of CAN-SPAM's savings clause would, as the Ninth Circuit explained, "create an exception to preemption [that] swallow[s] the rule and undermine[s] the regulatory balance that Congress established" and would "once again subject legitimate businesses to inconsistent and possibly incompatible state regulations." *Gordon v. Virtumundo Inc.*, 575 F.3d 1040, 1063 (9th Cir. 2009) (*quoting Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348 (4th Cir. 2006)). Recent decisions on the same question invite the *exact* vice that CAN-SPAM was designed to prevent. CAN-SPAM was passed to foreclose state law claims like Plaintiff's here, which are not traditional torts, and rightfully understood, it does just that. Moreover, the story told by the State in its Opposition to the Motion is both misleading and unpersuasive. The State, like the authorities it cites, and the selective quotations it provides, sheds little (if any) light on the preemption question posed by Plaintiff's lawsuit here.

*Second*, Plaintiff does not allege any claim that was "carved out" of CAN-SPAM preemption. The Ninth Circuit explained that the exception to CAN-SPAM preemption "refers to *traditionally tortious or wrongful conduct*." *Virtumundo*, 575 F.3d at 1062 (emphasis added). But here, Plaintiff does not even *attempt* to argue that her claim against HGV is a traditional tort such as fraud, deceit, or misrepresentation – *i.e.* a state law "tort action based on misrepresentation." *Id*. Doctrinally, there is nothing "traditionally tortious" about Plaintiff's

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT - 1
CASE NO. 2:25-cv-02205-TL

theory of relief under Washington law, as it lacks the hallmarks of a traditionally tortious claim, including the particular facts necessary to support such a claim under Rule 9(b).

*Third*, despite recognizing that she must plead "materiality" to state a claim under CEMA, Plaintiff's First Amended Complaint ("FAC") fails to do so. In lieu of any allegations showing that HGV's allegedly misleading emails were *material to Plaintiff*, the Opposition contends that the FAC should survive because HGV's emails are somehow "material" *to HGV* and others. This circular reasoning is nonsensical and finds no support in black letter law or the authorities Plaintiff cites, which demonstrate that materiality turns on the *plaintiff's* decision-making, not the defendant's or the opinions of third parties.

*Fourth*, Plaintiff's theory of "falsity" is not actionable under CEMA and was already *expressly rejected* by the Washington Supreme Court. Mot. at 10-11. Falsity cannot be retroactively created by subsequent events, yet that is precisely what Plaintiff asserts here. The Opposition ignores this pleading defect entirely, likely because it is fatal to Plaintiff's claim regardless of the Court's decision on federal preemption. Plaintiff's CEMA claim is therefore deficient and should be dismissed.

*Fifth*, the FAC does not allege that HGV had knowledge of Plaintiff's status as a Washington resident. As explained in the Motion, the FAC lists hypothetical tools that HGV "may" or "could" use to potentially ascertain residence information, but this is mere speculation, and it is insufficient to allege knowledge. Mot. at 13-14. And Plaintiff's mere recitation of the "constructive knowledge" provision of CEMA is facially improper, as Plaintiff does not even attempt to allege facts to support the applicability of that presumption.

*Finally*, Plaintiff's strict theory of liability, seeking millions of dollars in statutory damages with zero allegations of reliance or actual harm, would be disproportionate, constitutionally impermissible, and anathema to Congressional intent. Plaintiff does not contest the absurdity of this outcome. Instead, Plaintiff and the State insist that CEMA defendants must defend extraordinarily costly and often existential litigation before coming to the conclusion that

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT - 2
CASE NO. 2:25-cv-02205-TL

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

is already apparent on the face of Plaintiff's FAC: Plaintiff's claims far exceed the bounds of due process and undermine the balance struck by Congress in enacting CAN-SPAM.

## II.    ARGUMENT

### A.    CAN-SPAM Preempts Plaintiff's CEMA Claim.

CAN-SPAM was passed by Congress to address the patchwork of state laws regulating commercial email, which rendered nationwide compliance virtually impossible. Mot. at 5-6. Where states were once free to regulate commercial email, CAN-SPAM now expressly preempts such laws, save for those state-law causes of action which are exempted under 15 U.S.C. § 7707(b). Plaintiff contends that the savings clause in § 7707(b)(1) saves more than "traditionally tortious" claims, such as fraud, and includes statutory strict liability claims, like her own. If Plaintiff were correct, her reading would eviscerate the very purpose of CAN-SPAM preemption. Neither the statutory text nor circuit court precedent are so elastic as to embrace Plaintiff's expansive reading.

The Ninth Circuit concluded that "the express language of § 7707(b) demonstrates Congress's intent that the CAN–SPAM Act broadly preempt state regulation of commercial e-mail with limited, narrow exception." *Virtumundo*, at 1061 (emphasis added). Recognizing the "same ambiguity" in § 7707(b)(1)'s "false or deceptive" language as the Fourth Circuit, *Virtumundo* employs the canon of *noscitur a sociis*, reads "falsity" in conjunction with "deception," and concludes that Congress intended to exempt only "traditional tortious or wrongful conduct." *Id*. at 1062 (*citing Omega*, 469 F.3d at 354); Mot. at 4. *Virtumundo* highlights the Fourth Circuit's reasoning, declaring that "a contrary reading would upend the balance struck by Congress" and allow the exception to swallow the rule. *Id*. at 1061.

This Court's recent decisions in *Ma v. Nike, Inc.*, No. 25-cv-1235-JLR, 2026 WL 100731 (W.D. Wash. Jan. 14, 2026), and *Harrington v. Vineyard Vines, LLC*, No. 25-cv-1115-TSZ, 2025 WL 3677479 (W.D. Wash. Dec. 18, 2025)[1] upend the careful balance struck by Congress, depart

---

[1] *Harrington* was decided in a Minute Order and does not thoroughly analyze federal preemption or the consequences of the Court's decision in light of the purpose of CAN-SPAM preemption.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT - 3
CASE NO. 2:25-cv-02205-TL

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

from interpretations of § 7707(b)(1) in *Virtumundo* and *Omega*, and turn the loophole into a sinkhole. Respectfully, HGV submits that both decisions were wrongly decided.[2]

In concluding that CAN-SPAM did not preempt the plaintiff's CEMA claim, *Ma* misconceives the nature and scope of CAN-SPAM's preemption clause, and the narrow window of state law exception. The Court cites the Senate Report quoted in *Virtumundo*, which acknowledges that "*fraudulent or deceptive* headers, subject lines, or content in commercial e-mail[s] would not be preempted." *Virtumundo*, 575 F.3d at 1062; *Ma*, 2026 WL 100731, at *2; (quoting S. Rep. No. 108-102, at 21). However, this Senate Report quote, when rightly understood, squarely *undermines* any inference that Plaintiff's claim survives preemption. In enacting § 7707(b)(1), Congress plainly sought to displace *most* state law causes of action related to commercial emails, and to *allow* survival of claims *only* for fraud or deceit. *Virtumundo*, 575 F.3d at 1063. Congress' inclusion of "deception" in §7707(b)(1) is not a categorically broader type of common law claim that survives preemption; rather, it is simply a different name for the same tort, which is recognized in multiple jurisdictions across the country.[3] The Senate Report clarifies that certain state law claims – regardless of their label – which seek redress for material representations in a traditionally tortious manner are *not* preempted. Accordingly, CAN-SPAM

2025 WL 3677479, at *1.

[2] This Court is not bound by *Ma* or *Harrington* and need not follow either. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") (internal quotations omitted).

[3] Washington does not generally recognize a common law claim for "deceit," and treats such claims as arising in intentional/negligent misrepresentation, or fraud. *Studio 010 Inc. v. Dig. Cashflow LLC*, No. 2:20-cv-01018-DGE, 2024 WL 2274320, at *3 (W.D. Wash. May 20, 2024) (denying reconsideration where "the Court was not familiar with a claim for 'deceit and negligent misrepresentation' and therefore construed Plaintiff's claim as one for negligent misrepresentation."). States that recognize a common law "deceit" claim equate the claim to common law fraud. *See, e.g.*, Ala. Code § 6-5-103 (2026); Ga. Code Ann. § 51-6-2 (2025); *Copley Place Assocs., LLC v. Tellez-Bortoni*, 73 N.E.3d 317, 318 & n.1 (Mass. Ct. App. 2017) (referring to fraud claim as a "deceit action" and explaining that the court "treat[s] the terms 'deceit' and 'fraud' as interchangeable."); *Ridlon v. N.H. Bureau of Sec. Regul.*, 214 A.3d 1196, 1203 (N.H. 2019) (using the terms "fraud" and "deceit" interchangeably to describe the same claim); *N. Am. Truck & Trailer, Inc. v. M.C.I. Comm. Servs., Inc.*, 751 N.W.2d 710, 713 (S.D. 2008) (same); *Nails v. S & R, Inc.*, 639 A.2d 660, 668 (Md. Ct. App. 1994) (same); *see also* Restatement (Second) of Torts § 525 (Sept. 2025) (elements of deceit include fraudulent misrepresentation for the purpose of inducing another and detrimental reliance).

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT - 4
CASE NO. 2:25-cv-02205-TL

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

saves traditional "deceit" and fraud claims from preemption based on Congress's unremarkable desire for the exception to apply across all fifty states. Although the plaintiff's theory of liability in *Virtumundo* was different than Plaintiff's here, the Ninth Circuit (adopting the Fourth Circuit's reasoning) arrived at this same conclusion as to what §7707(b)(1)'s exception means *generally*. *Virtumundo*, 575 F.3d at 1062 ("[W]e are likewise persuaded that the exception language, read as Congress intended, refers to 'traditionally tortious or wrongful conduct.'") (*citing Omega*, 469 F.3d at 354).

Accordingly, to state a non-preempted CEMA claim, Plaintiff must allege a traditional tort in the forum state. "The CAN–SPAM Act established a national standard, but left the individual states free to extend traditional tort theories such as claims arising from fraud or deception to commercial email communication." *Id.* at 1063. The only way for Plaintiff's CEMA claim to survive federal preemption is to allege a Washington state law claim for fraud, which she has not done.

The Opposition ties itself in logical and procedural knots trying to recast Plaintiff's strict liability theory as something embraced by traditional tort theory. Plaintiff explains: "To merit preemption, a defendant under *Gordon* has to show it didn't do anything wrong, in light of the state standard to be applied to its conduct, viewed against the backdrop of what has traditionally been considered wrongful." Opp at 11. Plaintiff's confused and tortured summary of her own argument here, to the extent it can be understood, is wrong for multiple reasons and belies the problems with Plaintiff's view. First, it mischaracterizes preemption as somehow co-extensive with a determination of HGV's liability, which is flatly wrong because preemption is a doctrinal determination that precedes questions of liability. Second, it admits that Plaintiff's theory invites a patchwork of "state standards" for commercial email regulation, which is precisely what CAN-SPAM sought to prevent. And third, it suggests that the "traditional" tort theory is merely a "backdrop," and not the *sole legal mechanism for pleading non-preempted claims*. *Virtumundo*, 575 F.3d at 1063 (leaving states free to "extend traditional tort theories such as claims arising

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT - 5
CASE NO. 2:25-cv-02205-TL

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

from fraud or deception to commercial email communication."). Plaintiff's conception of CAN-SPAM preemption would save her claim while laying waste to the doctrinal guardrails set by Congress and the interpretations of both the Ninth and Fourth Circuits. The Court should not countenance such a departure here. Plaintiff's CEMA claim is not a traditional tort. It is preempted by CAN-SPAM and must be dismissed.

### 1.    The State's Intervention Opposition Is Not Persuasive.

The State's Opposition offers a new gloss on the same arguments made by Plaintiff. None are persuasive. First, the State re-hashes the canonical presumption against preemption, which is recited in *Virtumundo*. State Opp. at 3. Notably, the State neglects to mention the Ninth Circuit's *conclusion* in applying that presumption to CAN-SPAM's preemption clause: "Thus, the express language of § 7707(b) demonstrates Congress's intent that the CAN–SPAM Act **broadly** preempt state regulation of commercial e-mail with limited, narrow exception." *Virtumundo*, 575 F.3d at 1061 (emphasis added). Despite the narrow presumption, the Ninth Circuit concluded that CAN-SPAM's preemption was nevertheless *broad*. By reciting the presumption but not the outcome, the State's argument misses the point.

The limited, narrow exception has real meaning; the State just misreads the Ninth Circuit's opinion. The *Virtumundo* court reasoned that it was Congress' intent "to save from preemption *only*[4] statutes, regulations, or rules that target fraud or deception." *Id*. (quotations omitted, emphasis added). As explained in HGV's Motion, the court employed *noscitur a sociis* to read "falsity" in conjunction with "deception" to mean "traditionally tortious or wrongful conduct." Thus, "*only*" "traditionally tortious" claims for "fraud or deception" are saved from preemption.[5] The State misses this argument entirely by ignoring vast swaths of the court's analysis.

---

[4] The State apparently misses this key word in the Ninth Circuit's opinion. State Opp. at 4, Sect. A.1.

[5] The State contends that "deceit" and "deception" are different terms. State Opp. 8-9. What the State fails to do, however, is explain how its concept of deception (unlike deceit) is a "traditional tort," or how Congress could save from preemption state common law claims for deceit when it unambiguously sought to save its common analog called "fraud." Deceit is a traditional common

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT - 6
CASE NO. 2:25-cv-02205-TL

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

Instead of grappling with the Ninth Circuit's analysis of § 7707(b)'s preemptive force, or making an argument as to how Plaintiff's CEMA claim somehow falls into the narrow reservoir of traditionally tortious claims for fraud or deceit, the State's Opposition pivots to declare that *Virtumundo* only addressed § 7707(1)(a), not 1(b), and is therefore not helpful. State Opp. at 5-6. This is a bizarre argument, and it is demonstrably false. *See Virtumundo*, 575 F.3d at 1060-63 (interpreting preemptive scope of § 7707(b) for three pages).

The State's next argument is equally meritless. The State contends that the Washington Supreme Court's decision in *Brown* "harmonizes CEMA with CAN-SPAM." State Opp., at 6. This assertion is again demonstrably false, as the *Brown* court addresses only one statute, CEMA, and does not even *mention* – much less analyze, or "harmonize" – CEMA's interaction with CAN-SPAM. *See generally Brown v. Old Navy, LLC*, 567 P.3d 38 (Wash. 2025). Indeed, the certified question does not concern preemption whatsoever. *Id*. at 585–86. Whether the defendant in *Brown* made arguments to the federal district court regarding CAN-SPAM preemption does not, as a matter of law or logic, mean that the Washington Supreme Court "resolved" or "harmonized" CEMA with a federal statute *it did not even mention a single time*. The *Brown* court addressed one side of the equation – state law; it did not address the intersection of state law and federal law. The State's assertion is unfounded and baseless.

The State's final argument regarding preemption is merely a re-packaging of the same arguments made by Plaintiff. State Opp. at 11-12. They both insist that § 7707(b)(2)(B)'s usage of the word "fraud" implies that § 7707(b)(1) cannot mean fraud. Although perhaps intuitive, this argument calls for a direct repudiation of the interpretation that was *already* provided by the Ninth Circuit in *Virtumundo* regarding the meaning of § 7707(b)(1): "[W]e . . . interpret the CAN–SPAM Act's express preemption clause in a manner that preserves Congress's intended purpose—i.e., to regulate commercial e-mail on a nationwide basis, 15 U.S.C. § 7701**(b)(1),** and to save from preemption only statutes, regulations, or rules that target fraud or deception."

---

law claim, like fraud, and Congress sought to save them both from preemption.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT - 7
CASE NO. 2:25-cv-02205-TL

(citations and quotations omitted) (emphasis added). The Ninth Circuit did not adopt the State's interpretation of § 7701(b)(1), and nor should this Court.

### 2.    Plaintiff's Reliance on California Authorities Is Unavailing.

Plaintiff cites a host of cases addressing California's anti-spam law, none of which are helpful in analyzing Washington law. California's anti-spam law, Cal. Bus. & Prof. Code § 17529.5(a)(3), is substantially different from CEMA. Washington's law is preempted, while California's is not. Indeed, multiple decisions Plaintiff cites highlight this distinction. "Section 17529.5(a)(3) is also quite distinct from the Washington statute [CEMA] in *Virtumundo*. This [California] provision does not prohibit any conduct that is not prohibited by the CAN–SPAM Act." *Asis Internet Servs. v. Subscriberbase Inc*., No. 09-3503 SC, 2010 WL 1267763, at \*11 (N.D. Cal. Apr. 1, 2010); *Smith v. Anastasia Inc*., No. 14-CV-1685-H-MDD, 2014 WL 12577598, at \*3 (S.D. Cal. Sept. 15, 2014) ("But *Gordon* did not address Section 17529.5; it determined that CAN-SPAM preempted a Washington state law [CEMA].")

California's anti-spam law provides that it is unlawful to send a commercial email advertisement from or to California if "[t]he e-mail advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message."). Cal. Bus. & Prof. Code § 17529.5(a)(3). Thus, unlike CEMA, California's statute: (1) contains a materiality requirement; (2) embraces a reasonable person or "objective" falsity standard; and (3) applies to the public at large, and not strictly to the plaintiff asserting the claim. CEMA simply prohibits "false or misleading information in the subject line," with no further requirements. RCW 19.190.020(1)(b). These differences are more than cosmetic, they are substantive. The court in *Virtumundo*, as two California courts have observed, analyzed CAN-SPAM preemption of Washington's CEMA law and concluded that CEMA claims must be pleaded as traditional tort claims, such as fraud or deceit. Whether California's statute survives CAN-SPAM preemption is

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT - 8
CASE NO. 2:25-cv-02205-TL

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

wholly immaterial to whether this Court should re-visit the Ninth Circuit's holding and reasoning regarding Washington's provision.

Here, Plaintiff does not plead the traditional elements of a tort claim, and instead asserts a strict liability theory of relief. Mot. at 1, 2, 8, 9, 11. The Opposition dodges this fundamental defect, never explaining how traditional tort theory embraces a claim *without* allegations of reliance, materiality, knowledge, or damages. Plaintiff cannot do so. The claim fails.

### 3.    The FAC Does Not Satisfy Rule 9(b).

Plaintiff cursorily attempts a Rule 9(b) analysis, but the effort is unavailing. Substantively, Plaintiff does not allege the foundational elements of fraud such as reliance, materiality, or injury. Mot. at 8-12. Indeed, there is no "transaction" alleged anywhere in the FAC that Plaintiff could have relied on or suffered from any material misrepresentation. Plaintiff asserts, in conclusory fashion, that the Complaint "readily clears Rule 9(b)'s bar." Opp. at 15. For arguments labeled "who, what, when, where, how" (a shortcut often employed for fraud pleading), the Opposition consecutively bulk-cites to the same ***75 paragraphs*** across the FAC to support each element. *Id.* at 15-16. Instead of *pleading* specific facts to support *each* element, Plaintiff broadly characterizes a majority of the FAC as satisfying each component. This is facially deficient under Rule 9(b)'s particularity standard, both stylistically and substantively, as it deprives HGV and the Court of the ability to evaluate the allegations supporting each element. *Irving Firemen's Relief & Retirement Fund v. Uber Techs., Inc.*, 998 F.3d 397, 404 (9th Cir. 2021) ("Rule 9(b) imparts a heightened note of seriousness, requiring a greater degree of pre-discovery investigation by the plaintiff, followed by the plaintiff's required particular allegations, thereby protecting a defendant's reputation from frivolous and unfounded allegations and permitting a particularized basis for a defendant to respond to the particularized allegations.").

### B.    Plaintiff Does Not Allege Materiality.

The Motion explained that the FAC lacks any allegation of materiality, a fundamental element that is repeatedly emphasized in *Virtumundo* for any claim to survive preemption. Mot.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT - 9
CASE NO. 2:25-cv-02205-TL

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

at 8. The FAC contends that HGV's email promotions created "false urgency" and "time scarcity," but the FAC does not allege that this information was material to any purchasing decision *by Plaintiff. Id*. The Opposition has no answer for this defect.

Plaintiff apparently recognizes that materiality is required to state a CEMA claim, but insists that she has alleged materiality by pointing to: (i) a working paper from the United Kingdom about digital design and competition; (ii) a woefully misleading quote from the Supreme Court's decision in *Kousisis v. United States*, 145 S. Ct. 1382, 1396 (2025); and (iii) a series of rhetorical questions as to HGV's motivations. Opp. 12-15. Plaintiff's conception of materiality apparently concerns everyone *except* herself (*i.e.* British regulators, abstract "consumers," and the defendant). This is not what materiality means.

Plaintiff's invocation of *Kousisis* is misleading at a fundamental level, and a fulsome citation to the Court's opinion shows why. In the sentence immediately preceding Plaintiff's quote, the Court explains that materiality resembles "a but-for standard" and "asks ***whether the misrepresentation constituted an inducement or motive to enter into a transaction***." 605 U.S. at 131 (emphasis added).[6] Plaintiff omits this conceptual bedrock of materiality because she cannot satisfy it. Plaintiff *does not allege that she entered into any transaction with HGV whatsoever*.[7] HGV's marketing emails are not, and cannot be, "material" to a transaction that never occurred. Plaintiff asks for the benefit of the doubt under federal pleading standards, but reasonable inferences are no substitute for the lack of any allegation as to a fundamental element

---

[6] Washington law is in accord. *Young v. Toyota Motor Sales, U.S.A.*, 9 Wn. App. 2d 26, 36, 442 P.3d 5, 10 (2019), *aff'd*, 196 Wn.2d 310, 472 P.3d 990 (2020) (affirming dismissal of plaintiff's misrepresentation and CPA claims where plaintiff failed to show that *he* "*personally*, was induced by the mistake to buy the limited package") (emphasis added); *cf. Greenberg v. Dig. Media Sols., LLC*, 65 Cal. App. 5th 909, 916 (2021) (internal quotations omitted) (a "misrepresentation is material if reasonable person would attach importance to its existence or nonexistence in determining [the person's] choice of action *in the transaction in question*.") (emphasis added).

[7] The *Ma* decision similarly lacks any analysis of materiality *to the plaintiff* – specifically whether Nike's allegedly deceptive email subjects were a "but-for" cause of *plaintiff's* decision to enter into a transaction. As here, the complaint in *Ma* contained no allegation of any transaction, and therefore asserted no basis for a materiality analysis.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT - 10
CASE NO. 2:25-cv-02205-TL

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

of Plaintiff's claim. Plaintiff does not allege that HGV's emails were material to her decisions, purchases, or transactions, and no amount of discovery will remedy this defect.

## C.    Plaintiff's Theory of Falsity Is Not Actionable Under CEMA.

As explained in the Motion, the FAC does not allege that HGV knew its emails were "misleading" when they were sent. In place of factual allegations supporting an inference of actionable falsity, the FAC provides glib conclusions – that HGV's email campaigns were a "ruse," "untrue," or "false." Mot. at 10. The Motion further noted that, when a lawful explanation is plausible (such as the obvious and logical explanation that responses to an initial sale merited an extension of that sale), something more is needed. It is incumbent upon the *Plaintiff* to allege facts excluding a competing explanation. *Id*. Plaintiff simply fails to do so.

Instead, Plaintiff argues that HGV's marketing emails *must* be false or deceptive because they communicate "urgency" and "time scarcity." *See, e.g.*, FAC, ¶¶ 49, 53, 60-61, 70, 76, 89, 93, 96, 100, 105, 108, 111. Plaintiff's theory of "falsity" here is that HGV's *subsequent* emails retroactively render the *prior* emails false. *E.g., id*. ¶ 60 ("It didn't take long for HGV to demonstrate the falsity of its March 10 subject line because, by March 13, 2025, HGV returned to consumers' inboxes to spam them with the same offer.").

In *Brown v. Old Navy*, 4 Wn.3d 580, 583 (2025), the Court considered and rejected theories of falsity under CEMA for emails that become "false" retroactively. Mot. 10-11. Plaintiff's theory of falsity is expressly and unambiguously based on emails that allegedly become false retroactively, without any factual allegations that those emails were false at the time they were sent. The Opposition does not even attempt to address the doctrinal discord between Plaintiff's claim and Washington law, and nor could it. Plaintiff's theory of falsity is not actionable.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT - 11
CASE NO. 2:25-cv-02205-TL

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

**D.    Plaintiff Does Not Allege Knowledge, Actual or Constructive, of Plaintiff's Residence.**

The FAC asserts that HGV "has several ways of knowing" that Plaintiff is a Washington resident because HGV "may" possess or purchase six hypothetical services that can aid in approximating an email recipient's location. FAC ¶¶ 115-22. In other words, the FAC does *not* allege that HGV has any actual way of knowing an email recipient's residence. Rather than alleging that HGV has knowledge of residency, Plaintiff says that knowledge is *hypothetically possible*. This is facially insufficient regardless of how many hypothetical mechanisms Plaintiff includes in her pleading – aggregating a string of hypotheticals does not create a factual allegation. *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to rise above the speculative level."); *cf. Wright v. TrueCare Prop. Holdings*, No. 3:25-cv-00786-JES-BLM, 2025 WL 3248749, at *2 (S.D. Cal. Nov. 21, 2025) (holding in a HIPAA case, "hypothetical explanations of how the [defendant's software] could track sensitive information on a healthcare website, without factual allegations showing that Plaintiff's own actual [health information] was tracked, are insufficient to survive a motion to dismiss"). Contrary to the Opposition's protestations, the FAC does not rely on a single reasonable inference to which it is entitled – it relies on a trifle of inferences: that HGV possesses one of these six hypothetical tools; that HGV uses said tool to ascertain Plaintiff's residence information; and that said residence information is accurate and reliable. Without factual allegations *supporting* each inference Plaintiff asks the Court to draw, the FAC simply layers unsupported inferences upon one another. This is insufficient. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (explaining the court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

Plaintiff's fallback argument regarding "knowledge" is unserious. The Motion explained that CEMA contains a "constructive knowledge" provision, RCW 19.190.020(2)), and that the FAC does not allege even a single fact to support it. Mot. at 14. Rather, the FAC merely parrots

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT - 12
CASE NO. 2:25-cv-02205-TL

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

the statutory language. FAC, ¶¶ 123, 144. The Opposition does not disagree, but insists that the FAC's naked recitation is sufficient. This is false as a matter of law, as conclusory recitations of statutory language do not survive a motion to dismiss. *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) ("Courts need not accept as true legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.") (citations and quotations omitted). Here, RCW 19.190.020(2) is an "if-then" provision; *if* a subscriber's residence information is available from a recipient's email provider upon request, *then* constructive knowledge is imputed.

Thus, to establish constructive knowledge at the pleading stage (and satisfy the "*if*" in RCW 19.190.020(2)), Plaintiff must allege the identity of her email service, and its policy of voluntarily providing residence information to third parties (like HGV) upon request (if that service even retains such information).[8] Without *any* factual allegations to support the "if" of RCW 19.190.020(2), Plaintiff is not entitled to a presumption of HGV's "constructive knowledge" under CEMA. On this basis as well, Plaintiff's claim fails.

**E.      Plaintiff's Theory of Liability is Unconstitutionally Punitive.**

Contrary to the Opposition's assertions, the Washington Supreme Court has never ruled on whether CEMA is unconstitutionally punitive. In *Brown*, the Supreme Court found unpersuasive an argument that "it would be absurd to expose [the defendant] to liability under CEMA if it violated CEMA's truthfulness requirements because the liability is costly and because the body of the e-mail is unregulated by CEMA." 4 Wn.3d at 592. Here, HGV advances no such argument, and the dicta quoted by Plaintiff is inapplicable and irrelevant.

---

[8] The statutory backdrop for requesting location information matters. The Stored Communication Act, 18 U.S.C. § 2701 *et seq* ("SCA") forbids an "electronic communication service" (Gmail, for example) from divulging certain information about its subscribers to third parties. If an electronic communication service violates the prohibitions of the SCA, it can be held liable for equitable relief, damages, and discipline. 18 U.S.C. § 2707(a). Such services are *permitted* to disclose non-content information, such as geographic location of subscribers, to non-government entities under 18 U.S.C. § 2702(c)(6), if they have it, and if they wish, but they are not required to do so. This context further supports the need for factual allegations supporting Plaintiff's reliance on RCW 19.190.020(2) to establish HGV's constructive knowledge.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT - 13
CASE NO. 2:25-cv-02205-TL

HGV does not contend that it would be "absurd" to expose it to liability because liability is costly, but rather that the *extent* of the liability imposed by CEMA is unconstitutionally punitive, particularly in light of federal preemption. That contention is consistent with Washington caselaw: "[C]onstitutional due process concerns are heightened where, as here, **statutory damages are awarded as a matter of strict liability when plaintiffs are unable to quantify any actual damages they have suffered**." *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109 (9th Cir. 2022) (emphasis added). Plaintiff does not even attempt to argue that the amount she seeks is reasonable, let alone constitutional. Indeed, it is not. The Court need not wait to determine that a damages award would be unconstitutionally punitive where the FAC explicitly demands tens of millions of dollars in liquidated damages, contingent upon no showing of reliance or harm. *See, e.g.*, FAC ¶ 156 ("Plaintiff and putative members are entitled to . . . the greater of Plaintiff's actual damages or liquidated damages of $500 per violation, trebled.").

The State rests its argument on *Wakefield* and explains that "'constitutional due process limitations are more likely to apply' in circumstances '[w]here a statute's compensation and deterrence goals are so greatly overshadowed by punitive elements.'" State Opp. at 14 (quoting *Wakefield*, 51 F.4th at 1122). But this is exactly the point. In this putative class action, Plaintiff seeks minimally tens of millions of dollars from HGV for sending commercial emails with subject lines advertising real sales and promotions. Plaintiff never alleges that the promotions were fake or falsified, let alone that Plaintiff, or anyone else, engaged in *any* transaction due to HGV's alleged misrepresentations. Plaintiff's allegations here, if allowed to proceed, would transform CEMA into a highly punitive statute whereby virtually every business who sends marketing emails would be forced to litigate existential cases through summary judgment, against consumers who suffered no actual injury, yet seek tens or hundreds of millions of dollars. Many defendants will not have the financial wherewithal to survive such onerous litigation, even if they would ultimately prevail on the merits. This is exactly what *Wakefield* warns of—a circumstance

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT - 14
CASE NO. 2:25-cv-02205-TL

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

"in which a largely punitive per-violation amount results in an aggregate that is gravely disproportionate to and unreasonably related to the legal violation committed."[9]

### III.   CONCLUSION

For the reasons stated above, and those contained in HGV's Motion, Plaintiff's First Amended Complaint should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

//

//

//

---

[9] HGV noted that Plaintiff's conception of CEMA could run afoul of the commerce clause by seeking to regulate and burden extraterritorial conduct beyond the state of Washington. Mot. at 15, n.6. The State objects to the brevity of HGV's argument, but notably does not engage with the thrust of HGV's point – that imposing millions of dollars of liability upon foreign companies on behalf of no-injury classes exceeds the constitutional constraints of state regulation. The facts in *National Pork Producers Council v. Ross*, 598 U.S. 356, 368 (2023) did not even remotely approach the scope and breadth contemplated by Plaintiff's theory of liability for emails he received. HGV cautions that Plaintiff's theory constitutes an unprecedented expansion of state regulatory authority over interstate commerce in the shadow of a federal statute that expressly seeks to prevent that precise outcome.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT - 15
CASE NO. 2:25-cv-02205-TL

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

DATED: March 3, 2026

BALLARD SPAHR LLP

By:  *s/Erin M. Wilson*
Jeffrey M. Odom, WSBA No. 36168
Erin M. Wilson, WSBA No. 42454
Dailey Koga, WSBA No. 58683
1301 Second Avenue, Suite 2800
Seattle, Washington 98101
Phone: 206.223.7000
Email: odomj@ballardspahr.com
wilsonem@ballardspahr.com
kogad@ballardspahr.com

Ryan T. O'Hollaren (*pro hac vice*)
601 SW 2nd Avenue, Suite 2100
Portland, Oregon 97204
Email: ohollarenr@ballardspahr.com

*Attorneys for Defendant Hilton Grand Vacations, Inc.*

I certify this Memorandum contains 5268 words in compliance with the Local Civil Rules and the Court's Order.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT - 16
CASE NO. 2:25-cv-02205-TL

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107